**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| INTEGRAL WIRELESS TECHNOLOGIES LLC,<br><br>    *Plaintiff,*<br><br>    v.<br><br>LUMINATOR TECHNOLOGY GROUP GLOBAL, LLC,<br><br>    *Defendant.* | Civil Action No. 2:26-cv-00426<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Integral Wireless Technologies LLC (hereinafter, "Integral Wireless" or "Plaintiff") files this Complaint for Patent Infringement against Defendant Luminator Technology Group Global, LLC ("LTGG" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.    This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

| No. | Patent No. | Title | Available At |
|---|---|---|---|
| 1 | 7,676,007 | System and Method for Interpolation Based Transmit Beamforming for MIMO-OFDM with Partial Feedback | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7676007 |
| 2 | 7,738,595 | Multiple Input, Multiple Output Communications Systems | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7738595 |

| No. | Patent No. | Title | Available At |
|---|---|---|---|
| 3 | 7,627,805 | Data Coding with an Efficient LDPC Encoder | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7627805 |
| 4 | 8,139,544 | Pilot Tone Processing Systems and Methods | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8139544 |
| 5 | 8,156,360 | Systems and Methods for Waking Wireless LAN Devices | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8156360 |
| 6 | 8,976,714 | Providing and Acquiring A System Information Message In A Wireless Network | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8976714 |
| 7 | 7,707,214 | Hierarchical Update Scheme for Extremum Location with Indirect Addressing | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7707214 |
| 8 | 9,207,748 | Systems and Methods For A Wireless Device Wake-Up Process Including Power-Save and Non-Power-Save Modes | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9207748 |
| 9 | 7,949,068 | Systems and Methods for Transmitter Diversity | USPTO.gov, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7949068 |

2.    Integral Wireless seeks injunctive relief and monetary damages.

## PARTIES

3.    Integral Wireless is a limited liability company formed under the laws of Texas with a registered office address located at 512 W Martin Luther King Jr. Blvd., Unit 281, Austin, TX 78701.

4.      Upon information and belief based on public information, LTGG is a limited liability company organized and existing under the laws of Delaware.

5.      Upon information and belief based on public information, LTGG maintains principal place of business in this District at 900 Klein Road, Plano, Texas, 75074.

6.      LTGG's registered agent is C T Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136.

## JURISDICTION AND VENUE

7.      Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

8.      This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.      Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) because they have maintained established and regular places of business in this District and have committed acts of patent infringement in this District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

11.      For example, on information and belief, LTGG is registered to do business in Texas. *See* Filing Number 803566688, TEXAS SECRETARY OF STATE (last accessed May 15, 2026) (showing Luminator Technology Group Global, LLC is registered to do business in Texas).

12.      Upon information and belief based on public information, LTGG maintains its principal place of business in this District at 900 Klein Road, Plano, Texas, 75074.

13.      On information and belief, Defendant LTGG is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at

least to its substantial business in this State and this District, including: (A) at least part of its infringing activities alleged herein, including its registration to do business in Texas, which purposefully avail the Defendant of the privilege of conducting those activities in this state and this District and, thus, submits itself to the jurisdiction of this court; and (B) regularly doing or soliciting business, engaging in other persistent conduct targeting residents of Texas and this District, and/or deriving substantial revenue from infringing goods offered for sale, sold, and imported and services provided to and targeting Texas residents and residents of this District vicariously through and/or in concert with its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, affiliates, and/or consumers.

14.     Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offer its products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

15.     Defendant is engaging in activities, including but not limited to transacting business in this District and purposefully directing its business activities, including the installation, maintenance, and use of infringing products and other related technologies in this District, and the sale or offer for sale of services and goods in this District to aid, abet, or contribute to the infringement of third parties in this District.

16.     Defendant commits acts of infringement in this District, including, but not limited to, selling, offering for sale, and using (including through testing) the Accused Products.

17.     Defendant commits acts of induced infringement in this District, including, but not limited to inducement of infringement by its parents, subsidiaries, partners, affiliates, and end-

users to use the Accused Products.

18.    Defendant commits acts of contributory infringement in this District, including, but not limited to contributing to infringement by its parents, subsidiaries, partners, affiliates, and end-users through its use of the Accused Products.

19.    Such a corporate and commercial presence by Defendant LTGG furthers the development, design, manufacture, importation, distribution, and sale of Defendant's infringing products in Texas, including in this District. Through utilization of its business segments and the direction and control of its subsidiaries and affiliates, LTGG has committed acts of direct and/or indirect patent infringement within Texas, this District, and elsewhere in the United States, giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over LTGG would not offend traditional notions of fair play and substantial justice.

20.    Based on Defendant LTGG's connections and relationship with its distributors, resellers, contractors, dealers, installers, local and U.S. based national retailers, and digital distribution platforms, LTGG knows that Texas is a termination point of the established distribution channel for the sale and use of LTGG products. LTGG, therefore, has purposefully directed its activities at Texas, and should reasonably anticipate being brought in this Court, at least on this basis. *See Icon Health & Fitness, Inc. v. Horizon Fitness, Inc.*, 2009 WL 1025467 (E.D. Tex. 2009) (finding that "[a]s a result of contracting to manufacture products for sale in" national retailers' stores, the defendant "could have expected that it could be brought into court in the states where [the national retailers] are located").

21.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(c) and 1400(b). As alleged herein, Defendant LTGG has committed acts of infringement in this District. As further alleged herein, Defendant LTGG, via its own operations and employees located there, has a regular

and established place of business, in this District. Accordingly, LTGG may be sued in this district under 28 U.S.C. § 1400(b).

## THE ACCUSED PRODUCTS

22. Integral Wireless repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

23. Defendant uses, causes to be used, sells, offers for sale, provides, supplies, or distributes various H.265/HEVC compatible devices, 802.11n/ac/ax Wi-Fi compatible devices, 5G compatible devices, Bluetooth Low Energy (BLE) 5.0+ compatible devices, and Bluetooth Basic Rate/Enhanced Data Rate (BT BR-EDR) version 4.1 and higher compatible devices (the "Accused Products") including, but not limited to, the following products:

***On-Board Recorders / DVRs:***

- RoadRunner Pro / RoadRunner Pro System

- Apollo RoadRunner 4K Recorder

- RoadRunner Analog HD Video Recorder

- Video Recorder X-DVRS+

- Video Recorder X-DMR IP+

***On-Board Cameras:***

- RoadRunner Pro Forward-Facing Camera

- RoadRunner Pro 4K Forward-Facing Camera

- RoadRunner Pro Exterior Street-Side / Curb-Side Camera

- RoadRunner Pro Interior Dome IP Camera

- RoadRunner Pro 360° Camera

- RoadRunner Pro IPC Backup Camera

- X-IPCAM F201

- RoadRunner HD Camera Interior Forward-Facing

- RoadRunner HD Camera Interior Dome

- On-Board Dome Camera

- RoadRunner 360° Camera

- RoadRunner HD Camera Interior Compact

- RoadRunner HD Camera Exterior Dome

***Network Components / Routers:***

- RoadRunner WC400

- RoadRunner WC340

- Apollo Vionet 3000 series mobile router

***Displays / Signage:***

- Outdoor TFT Monitor 32" Double-Sided

- OUTDOOR TFT Monitor 55"

- OUTDOOR TFT KIOSK 46"

- OUTDOOR LED SIGN (192 × 64 Pixels, Double Sided)

- Destination Display ULTIMA Wireless

*Telematics / Fleet Management:*

- INFORM Telematics Tablet

- Inform Telematics GEOTAB G09

*See, e.g.*, **Exhibits A–L**.

24. Defendant also instructs their customers, agents, employees, and affiliates regarding how to use the Accused Products for infringing purposes. *See, e.g.*, *RoadRunner 4K™ User Guide and Instruction Manual*, LUMINATOR TECHNOLOGY GROUP, available at https://luminator.com/images/stories/user_area/manuals/RR_4K_Manual_v1.2.1.pdf (last visited May 15, 2026); *RoadRunner HDX™ User Guide and Instruction Manual*, LUMINATOR TECHNOLOGY GROUP, available at https://luminator.com/images/stories/user_area/manuals/RoadRunner-HDX_Recorder_Manual_V.A_Rev1.0.pdf (last visited May 15, 2026); *User Guide & Instruction Manual: RoadRunner AHD*, LUMINATOR TECHNOLOGY GROUP, available at https://luminator.com/images/stories/download_customer/north_america/Manuals2020/AHD_Manual-1.0.pdf (last visited May 15, 2026).

25. Defendant also imports into the United States, distributes, and sells the Accused Products to end-users via the Internet and via distribution partners, retailers, reseller partners, and solution partners. *See, e.g.*, *Products*, LUMINATOR TECHNOLOGY GROUP, https://luminator.com/en-us/products.html (showing LTGG's products for sale). Those sales occur in the United States, and throughout Texas, including in this District.

26. For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I.     INFRINGEMENT OF U.S. PATENT NO. 7,676,007**

27.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

28.     For purposes of this Count, the term "Accused Products" shall mean Luminator's 802.11ac Wi-Fi compatible devices including, but not limited to, the RoadRunner Pro, RoadRunner WC400, RoadRunner WC340, Outdoor TFT Monitor 32" Double-Sided, Apollo RoadRunner 4K Recorder, RoadRunner Analog HD Video Recorder, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

29.     The USPTO duly issued U.S. Patent No. 7,676,007 (hereinafter, the "'007 patent") on March 9, 2010, after full and fair examination of Application No. 11/188,233 which was filed on July 21, 2005. *See* '007 patent at p. 1.

30.     Integral Wireless owns all substantial rights, interest, and title in and to the '007 patent, including the sole and exclusive right to prosecute this action and enforce the '007 patent against infringers and to collect damages for all relevant times.

31.     The claims of the '007 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed inventions include inventive components that relate to a multiple input multiple output system using orthogonal frequency division multiplexing, and more particularly, to systems using partial feedback for interpolation based transmit beamforming.

32.     The written description of the '007 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

33.    Defendant has directly infringed, and continues to directly infringe, one or more claims of the '007 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

34.    Defendant has directly infringed, and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '007 patent.

35.    As just one example, Defendant, through the use and provision of the Accused Products, provides communication apparatuses comprising: a plurality of antennas; and a transmitter coupled to the antennas and configured to provide to the antennas a plurality of output signals on a plurality of subcarriers for transmission to a receiver of another communication apparatus, wherein: the transmitter is configured to provide the output signals in response to a plurality of input signals and limited feedback information; the transmitter is configured to receive the limited feedback information from the receiver; the limited feedback information includes interpolation information and beamforming vectors for a subset of the subcarriers; the transmitter is configured to derive beamforming vectors for at least one subcarrier of the plurality of subcarriers not included in the subset based at least on an interpolation of the beamforming vectors for a subset of the subcarriers; the interpolation is based at least in part on the interpolation information; and the interpolation information includes phase values. *See* Ex. A.

36.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

37.    Defendant willfully blinded itself to the existence of the '007 patent and Defendant's

infringement, but Defendant had actual knowledge of the '007 patent since at least the time of receiving the original complaint in this action.

38.     Defendant has also indirectly infringed one or more claims of the '007 patent by inducing others to directly infringe said claims.

39.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '007 patent by providing or requiring use of the Accused Products.

40.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '007 patent, including, for example, claim 1.

41.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

42.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '007 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '007 patent.

43.     Defendant's inducement is ongoing.

44.     Defendant has also indirectly infringed by contributing to the infringement of one or

more claims of the '007 patent.

45.     Defendant has contributed to the direct infringement of one or more claims of the '007 patent by their personnel, contractors, and customers.

46.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '007 patent, including, for example, claim 1.

47.     The special features constitute a material part of the invention of one or more of the claims of the '007 patent and are not staple articles of commerce suitable for substantial non-infringing use.

48.     Defendant's contributory infringement is ongoing.

49.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

50.     Defendant's direct infringement of one or more claims of the '007 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

51.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '007 patent.

52.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '007 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own

ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

53.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT II.    INFRINGEMENT OF U.S. PATENT NO. 7,738,595**

54.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

55.    For purposes of this Count, the term "Accused Products" shall mean Luminator's 802.11n/ac/ax Wi-Fi compatible devices including, but not limited to, the RoadRunner Pro, RoadRunner WC400, RoadRunner WC340, Outdoor TFT Monitor 32" Double-Sided, Apollo RoadRunner 4K Recorder, RoadRunner Analog HD Video Recorder, Apollo Vionet 3000 series mobile router, OUTDOOR TFT Monitor 55", OUTDOOR TFT KIOSK 46", OUTDOOR LED SIGN (192 × 64 Pixels, Double Sided), and Video Recorder X-DMR IP+, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

56.    The USPTO duly issued U.S. Patent No. 7,738,595 (hereinafter, the "'595 patent") on June 15, 2010, after full and fair examination of Application No. 11/674,389 which was filed on February 13, 2007. *See* '595 patent at p. 1.

57.    Integral Wireless owns all substantial rights, interest, and title in and to the '595 patent, including the sole and exclusive right to prosecute this action and enforce the '595 patent against

infringers and to collect damages for all relevant times.

58. The claims of the '595 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed inventions include inventive components that improve upon systems and methods for transmission and reception of multiple data streams in a multiple-input, multiple-output communications channel.

59. The written description of the '595 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

60. Defendant has directly infringed, and continues to directly infringe, one or more claims of the '595 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

61. Defendant has directly infringed, and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '595 patent.

62. As just one example, Defendant, through the use and provision of the Accused Products, provides a MIMO signal transmitter comprising at least two vector multipliers, each vector multiplier configured to weight a respective input signal with a vector to form a weighted signal; and at least two antennas, each antenna coupled to at least one of the vector multipliers to transmit a weighted signal, wherein: a channel matrix decomposition is used to determine the vectors for weighting. *See* Ex. B.

63. Defendant has a policy or practice of not reviewing the patents of others, including

instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

64.     Defendant willfully blinded itself to the existence of the '595 patent and Defendant's infringement, but Defendant had actual knowledge of the '595 patent since at least the time of receiving the original complaint in this action.

65.     Defendant has also indirectly infringed one or more claims of the '595 patent by inducing others to directly infringe said claims.

66.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '595 patent by providing or requiring use of the Accused Products.

67.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '595 patent, including, for example, claim 1.

68.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

69.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '595 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would

infringe the '595 patent.

70.     Defendant's inducement is ongoing.

71.     Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '595 patent.

72.     Defendant has contributed to the direct infringement of one or more claims of the '595 patent by their personnel, contractors, and customers.

73.     The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '595 patent, including, for example, claim 1.

74.     The special features constitute a material part of the invention of one or more of the claims of the '595 patent and are not staple articles of commerce suitable for substantial non-infringing use.

75.     Defendant's contributory infringement is ongoing.

76.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

77.     Defendant's direct infringement of one or more claims of the '595 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

78.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '595 patent.

79.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to

suffer this harm by virtue of Defendant's infringement of one or more claims of the '595 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

80.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT III.    INFRINGEMENT OF U.S. PATENT NO. 7,627,805

81.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

82.    For purposes of this Count, the term "Accused Products" shall mean Luminator's 802.11n/ac/ax Wi-Fi compatible devices and 5G compatible devices including, but not limited to, the RoadRunner Pro, RoadRunner WC400, RoadRunner WC340, Outdoor TFT Monitor 32" Double-Sided, Apollo RoadRunner 4K Recorder, RoadRunner Analog HD Video Recorder, Apollo Vionet 3000 series mobile router, OUTDOOR TFT Monitor 55", OUTDOOR TFT KIOSK 46", OUTDOOR LED SIGN (192 × 64 Pixels, Double Sided), and Video Recorder X-DMR IP+, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

83.    The USPTO duly issued U.S. Patent No. 7,627,805 (hereinafter, the "'805 patent") on

December 1, 2009, after full and fair examination of Application No. 11/069,444 which was filed on February 28, 2005. *See* '805 patent at p. 1.

84.    Integral Wireless owns all substantial rights, interest, and title in and to the '805 patent, including the sole and exclusive right to prosecute this action and enforce the '805 patent against infringers and to collect damages for all relevant times.

85.    The claims of the '805 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed inventions include inventive components that improve the function and operation of data coding methods by providing an efficient LDPC encoder that generates codewords from a mother code parity check matrix and a macro matrix.

86.    The written description of the '805 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

87.    Defendant has directly infringed, and continues to directly infringe, one or more claims of the '805 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

88.    Defendant has directly infringed, and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '805 patent.

89.    As just one example, Defendant, through the use and provision of the Accused Products, performs a method of coding data for transmission in a communication channel comprising generating a codeword from a mother code parity check matrix and a macro matrix,

wherein the mother code parity check matrix comprises a (j*m)-by-(k*m) matrix and includes sub-matrices that are m-by-m square matrices with cyclic structure. *See* Exs. C and D.

90.     Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

91.     Defendant willfully blinded itself to the existence of the '805 patent and Defendant's infringement, but Defendant had actual knowledge of the '805 patent since at least the time of receiving the original complaint in this action.

92.     Defendant has also indirectly infringed one or more claims of the '805 patent by inducing others to directly infringe said claims.

93.     Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '805 patent by providing or requiring use of the Accused Products.

94.     Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '805 patent, including, for example, claim 1.

95.     Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

96.     Defendant is performing these steps, which constitute induced infringement with the knowledge of the '805 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '805 patent.

97.     Defendant's inducement is ongoing.

98.     Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '805 patent.

99.     Defendant has contributed to the direct infringement of one or more claims of the '805 patent by their personnel, contractors, and customers.

100.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '805 patent, including, for example, claim 1.

101.    The special features constitute a material part of the invention of one or more of the claims of the '805 patent and are not staple articles of commerce suitable for substantial non-infringing use.

102.    Defendant's contributory infringement is ongoing.

103.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

104.    Defendant's direct infringement of one or more claims of the '805 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

105.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one

or more claims of the '805 patent.

106. Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '805 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

107. Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV.   INFRINGEMENT OF U.S. PATENT NO. 8,139,544

108. Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

109. For purposes of this Count, the term "Accused Products" shall mean Luminator's 802.11n/ac/ax Wi-Fi compatible devices including, but not limited to, the RoadRunner Pro, RoadRunner WC400, RoadRunner WC340, Outdoor TFT Monitor 32" Double-Sided, Apollo RoadRunner 4K Recorder, RoadRunner Analog HD Video Recorder, Apollo Vionet 3000 series mobile router, OUTDOOR TFT Monitor 55", OUTDOOR TFT KIOSK 46", OUTDOOR LED SIGN (192 × 64 Pixels, Double Sided), and Video Recorder X-DMR IP+, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated

hardware, software, applications, and functionality associated with those products and solutions.

110.   The USPTO duly issued U.S. Patent No. 8,139,544 (hereinafter, the "'544 patent") on March 20, 2012, after full and fair examination of Application No. 11/073,714 which was filed on March 4, 2005. *See* '544 patent at p. 1.

111.   Integral Wireless owns all substantial rights, interest, and title in and to the '544 patent, including the sole and exclusive right to prosecute this action and enforce the '544 patent against infringers and to collect damages for all relevant times.

112.   The claims of the '544 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed invention includes inventive components that improve wireless communication systems and methods by disclosing a pilot tone processing system comprising pilot tone logic configured to receive first pilot tone data corresponding to a first transmit antenna and second pilot tone data corresponding to a second transmit antenna and separate the first pilot tone data from the second pilot tone data.

113.   The written description of the '544 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

114.   Defendant has directly infringed, and continues to directly infringe, one or more claims of the '544 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

115.   Defendant has directly infringed, and continues to directly infringe, either literally or

under the doctrine of equivalents, at least claim 1 of the '544 patent.

116.    As just one example, Defendant, through the use and provision of the Accused Products, performs a method comprising: receiving, at a receiving device, a first signal transmitted, from a first antenna, on a first communications path and a second signal transmitted, from a second antenna, on a second communications path, wherein the first signal includes a first set of data subcarriers and a first set of pilot subcarriers, and wherein the second signal includes a second set of data subcarriers and a second set of pilot subcarriers; separating the first set of data subcarriers from the second set of data subcarriers and separating the first set of pilot subcarriers from the second set of pilot subcarriers according to a signal separating function, wherein the signal separating function is based on a first channel estimate for the first communications path and a second channel estimate for the second communications path; and match-filter combining at least one pilot subcarrier of the first set of pilot subcarriers with at least one pilot subcarrier of the second set of pilot subcarriers. *See* Ex. E.

117.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

118.    Defendant willfully blinded itself to the existence of the '544 patent and Defendant's infringement, but Defendant had actual knowledge of the '544 patent since at least the time of receiving the original complaint in this action.

119.    Defendant has also indirectly infringed one or more claims of the '544 patent by inducing others to directly infringe said claims.

120.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the

doctrine of equivalents, one or more claims of the '544 patent by providing or requiring use of the Accused Products.

121.   Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '544 patent, including, for example, claim 1.

122.   Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

123.   Defendant is performing these steps, which constitute induced infringement with the knowledge of the '544 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '544 patent.

124.   Defendant's inducement is ongoing.

125.   Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '544 patent.

126.   Defendant has contributed to the direct infringement of one or more claims of the '544 patent by their personnel, contractors, and customers.

127.   The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '544 patent, including, for example, claim 1.

128.     The special features constitute a material part of the invention of one or more of the claims of the '544 patent and are not staple articles of commerce suitable for substantial non-infringing use.

129.     Defendant's contributory infringement is ongoing.

130.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

131.     Defendant's direct infringement of one or more claims of the '544 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

132.     Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '544 patent.

133.     Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '544 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

134.     Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT V.      INFRINGEMENT OF U.S. PATENT NO. 8,156,360

135.     Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

136.     For purposes of this Count, the term "Accused Products" shall mean Luminator's Bluetooth Low Energy (BLE) 5.0+ compatible devices and Bluetooth Basic Rate/Enhanced Data Rate (BT BR-EDR) version 4.1 and higher compatible devices, including but not limited to, INFORM Telematics Tablet, Inform Telematics GEOTAB G09, Destination Display ULTIMA Wireless, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

137.     The USPTO duly issued U.S. Patent No. 8,156,360 (hereinafter, the "'360 patent") on April 10, 2012, after full and fair examination of Application No. 12/168,706 which was filed on July 7, 2008. *See* '360 patent at p. 1.

138.     Integral Wireless owns all substantial rights, interest, and title in and to the '360 patent, including the sole and exclusive right to prosecute this action and enforce the '360 patent against infringers and to collect damages for all relevant times.

139.     The claims of the '360 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed inventions include inventive components that improve wireless communication systems by disclosing an apparatus comprising a controller configured to monitor a plurality of wireless channels for a wake-up packet addressed to a wireless device during a monitor timeframe.

140.     The written description of the '360 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

141. Defendant has directly infringed, and continues to directly infringe, one or more claims of the '360 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

142. Defendant has directly infringed, and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 8 of the '360 patent.

143. As just one example, Defendant, through the use and provision of the Accused Products, provides an apparatus comprising: a controller configured to monitor a plurality of wireless channels for a wake-up packet addressed to a wireless device during a monitor timeframe, wherein the wake-up packet is configured to cause the wireless device to initiate a transition from operating in a first power mode to operating in a second power mode, wherein the controller is configured to initiate the transition from operating the wireless device in the first power mode to operating the wireless device in the second power mode when a wake-up packet addressed to the wireless device has been received before the monitor timeframe has elapsed, and wherein the controller is configured to cease to monitor the plurality of wireless channels when a wake-up packet addressed to the wireless device has not been received after the monitor timeframe has elapsed. *See* Exs. F and G.

144. Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

145.    Defendant willfully blinded itself to the existence of the '360 patent and Defendant's infringement, but Defendant had actual knowledge of the '360 patent since at least the time of receiving the original complaint in this action.

146.    Defendant has also indirectly infringed one or more claims of the '360 patent by inducing others to directly infringe said claims.

147.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '360 patent by providing or requiring use of the Accused Products.

148.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '360 patent, including, for example, claim 8.

149.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

150.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '360 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '360 patent.

151.    Defendant's inducement is ongoing.

152.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '360 patent.

153.    Defendant has contributed to the direct infringement of one or more claims of the '360 patent by their personnel, contractors, and customers.

154.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '360 patent, including, for example, claim 8.

155.    The special features constitute a material part of the invention of one or more of the claims of the '360 patent and are not staple articles of commerce suitable for substantial non-infringing use.

156.    Defendant's contributory infringement is ongoing.

157.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

158.    Defendant's direct infringement of one or more claims of the '360 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

159.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '360 patent.

160.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '360 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license

technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

161.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI.    INFRINGEMENT OF U.S. PATENT NO. 8,976,714

162.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

163.    For purposes of this Count, the term "Accused Products" shall mean Luminator's 5G compatible devices including, but not limited to, the RoadRunner Pro, and other substantially similar products and services offered in the past or the future, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

164.    The USPTO duly issued U.S. Patent No. 8,976,714 (hereinafter, the "'714 patent") on March 10, 2015, after full and fair examination of International Application No. PCT/EP2009/008798, which has a § 371(c)(1), (2), (4) date of November 15, 2011. *See* '714 patent at p. 1.

165.    Integral Wireless owns all substantial rights, interest, and title in and to the '714 patent, including the sole and exclusive right to prosecute this action and enforce the '714 patent against infringers and to collect damages for all relevant times.

166.    The claims of the '714 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity. Rather, as just one example, the claimed invention includes inventive components that improve receiving system information messages by disclosing user equipment that is configured to receive si-Windowlength information in a SI type 1 message.

167.    The written description of the '714 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

168.    Defendant has directly infringed, and continues to directly infringe, one or more claims of the '714 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

169.    Defendant has directly infringed, and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '714 patent.

170.    As just one example, Defendant, through the use and provision of the Accused Products, provides a user equipment (UE) comprising: a receiver configured to receive si-Windowlength information, wherein the si-Windowlength information is received in a system information (SI) type 1 message; a processor configured to calculate a downlink (DL) subframe wherein a SI message starts, wherein the calculated DL subframe is based on a total number of DL subframes contained in a radio frame; the processor further configured to calculate in the radio frame where the SI message starts, wherein the calculated radio frame is based on the total number of DL subframes contained in the radio frame; and the receiver further configured to receive the SI message, in the calculated DL subframe of the calculated radio frame, during a period provided

by the si-Windowlength information. *See* Ex. H.

171.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

172.    Defendant willfully blinded itself to the existence of the '714 patent and Defendant's infringement, but Defendant had actual knowledge of the '714 patent since at least the time of receiving the original complaint in this action.

173.    Defendant has also indirectly infringed one or more claims of the '714 patent by inducing others to directly infringe said claims.

174.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '714 patent by providing or requiring use of the Accused Products.

175.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '714 patent, including, for example, claim 1.

176.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

177.    Defendant is performing these steps, which constitute induced infringement with the

knowledge of the '714 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '714 patent.

178.    Defendant's inducement is ongoing.

179.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '714 patent.

180.    Defendant has contributed to the direct infringement of one or more claims of the '714 patent by their personnel, contractors, and customers.

181.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '714 patent, including, for example, claim 1.

182.    The special features constitute a material part of the invention of one or more of the claims of the '714 patent and are not staple articles of commerce suitable for substantial non-infringing use.

183.    Defendant's contributory infringement is ongoing.

184.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

185.    Defendant's direct infringement of one or more claims of the '714 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

186.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '714 patent.

187.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '714 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

188.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VII.    INFRINGEMENT OF U.S. PATENT NO. 7,707,214

189.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

190.    For purposes of this Count, the term "Accused Products" shall mean Luminator's H.265/HEVC compatible devices including, but not limited to, the RoadRunner Pro system, RoadRunner Pro Forward-Facing Camera, RoadRunner Pro 4K Forward-Facing Camera, RoadRunner Pro Exterior Street-Side / Curb-Side Camera, RoadRunner Pro Interior Dome IP Camera, RoadRunner Pro 360° Camera, Apollo RoadRunner 4K Recorder, RoadRunner HD Camera Interior Forward-Facing, Video Recorder X-DVRS+, RoadRunner HD Camera Interior Dome, On-Board Dome Camera, RoadRunner 360° Camera, RoadRunner HD Camera Interior Compact, RoadRunner HD Camera Exterior Dome, RoadRunner Pro IPC Backup Camera, X-IPCAM F201, and other substantially similar products and services offered in the past or the future,

and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

191.    The USPTO duly issued U.S. Patent No. 7,707,214 (hereinafter, the "'214 patent") on April 27, 2010, after full and fair examination of Application No. 11/677,515 which was filed on February 21, 2007.  *See* '214 patent at p. 1.

192.    Integral Wireless owns all substantial rights, interest, and title in and to the '214 patent, including the sole and exclusive right to prosecute this action and enforce the '214 patent against infringers and to collect damages for all relevant times.

193.    The claims of the '214 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed inventions include inventive components that improve the function and operation of data processing systems by organizing data into a hierarchical structure of partitions, in which each level stores extrema for a group of elements from the level below, thereby enabling efficient and scalable data updates without the need to reprocess the entire dataset—a technique relied upon by hierarchical video coding schemes including the H.265/HEVC standard.

194.    The written description of the '214 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

195.    Defendant has directly infringed, and continues to directly infringe, one or more claims of the '214 patent by making, using, selling, offering for sale, importing into the United States,

providing, supplying, or distributing the Accused Products.

196.    Defendant has directly infringed, and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 15 of the '214 patent.

197.    As just one example, Defendant, through the use and provision of the Accused Products, performs method, comprising: partitioning, by a computing device, a set of data values into one or more partitions in memory; generating, by the computing device, a coarse representation of extrema of each of the one or more partitions of the set of data values and storing indices indicative of locations of extrema in the partitions in memory; and updating, by the computing device, the coarse representation in response to altering one or more data values of the set of data values, wherein the updating comprises storing in memory indices indicative of locations of any new extrema in partitions from the one or more partitions of the set of data values that include altered data values. *See* Ex. I.

198.    Defendant has a policy or practice of not reviewing the patents of others, including instructing their employees to not review the patents of others, and thus have been willfully blind of Integral Wireless' patent rights.

199.    Defendant willfully blinded itself to the existence of the '214 patent and Defendant's infringement, but Defendant had actual knowledge of the '214 patent since at least the time of receiving the original complaint in this action.

200.    Defendant has also indirectly infringed one or more claims of the '214 patent by inducing others to directly infringe said claims.

201.    Defendant has induced end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '214 patent by providing or requiring use of the

Accused Products.

202.    Defendant took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '214 patent, including, for example, claim 15.

203.    Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or providing ongoing instructional and technical support to customer on their website on how to use the Accused Products in an infringing manner.

204.    Defendant is performing these steps, which constitute induced infringement with the knowledge of the '214 patent and with the knowledge that the induced acts constitute infringement. Defendant is aware that the normal and customary use of the Accused Products by others would infringe the '214 patent.

205.    Defendant's inducement is ongoing.

206.    Defendant has also indirectly infringed by contributing to the infringement of one or more claims of the '214 patent.

207.    Defendant has contributed to the direct infringement of one or more claims of the '214 patent by their personnel, contractors, and customers.

208.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '214 patent, including, for example, claim 15.

209.    The special features constitute a material part of the invention of one or more of the

claims of the '214 patent and are not staple articles of commerce suitable for substantial non-infringing use.

210.    Defendant's contributory infringement is ongoing.

211.    Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

212.    Defendant's direct infringement of one or more claims of the '214 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Integral Wireless' rights under the patent.

213.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '214 patent.

214.    Integral Wireless has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law. Integral Wireless has and will continue to suffer this harm by virtue of Defendant's infringement of one or more claims of the '214 patent. Defendant's actions have interfered with and will interfere with Integral Wireless' ability to license technology. The balance of hardships favors Integral Wireless' ability to commercialize its own ideas and technology. The public interest in allowing Integral Wireless to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

215.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT VIII.    INFRINGEMENT OF U.S. PATENT NO. 9,207,748

216.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

217.    For purposes of this Count, the term "Accused Products" shall mean Luminator's Bluetooth Low Energy (BLE) 5.0+ compatible devices and Bluetooth Basic Rate/Enhanced Data Rate (BT BR-EDR) version 4.1 and higher compatible devices, including but not limited to, INFORM Telematics Tablet, Inform Telematics GEOTAB G09, Destination Display ULTIMA Wireless, and other substantially similar products and services offered in the past, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

218.    The USPTO duly issued U.S. Patent No. 9,207,748 (hereinafter, the "'748 patent") on December 8, 2015, after full and fair examination of Application No. 14/335,545 which was filed on July 18, 2014. *See* '748 patent at p. 1.

219.    Integral Wireless owns all substantial rights, interest, and title in and to the '748 patent, including the sole and exclusive right to prosecute this action and enforce the '748 patent against infringers and to collect damages for all relevant times.

220.    The claims of the '748 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed invention includes inventive components that improve wireless communication systems by disclosing systems and methods for a wireless device wake-up process including power-save and non-power-save modes.

221.    The written description of the '748 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

222.    During the period prior to the expiration of the '748 patent, Defendant directly infringed one or more claims of the '748 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

223.    Defendant directly infringed, either literally or under the doctrine of equivalents, at least claim 8 of the '748 patent during the period prior to expiration.

224.    As just one example, prior to the expiration of the '748 patent, Defendant, through the use and provision of the Accused Products, provided apparatuses and methods by which a controller monitored a plurality of wireless channels for a wake-up packet addressed to a wireless device during a monitor timeframe, the wake-up packet being configured to cause the wireless device to transition between power-save and non-power-save modes. *See* Exs. J and K.

225.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '748 patent.

226.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such past infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284, for the period of infringement prior to expiration of the '748 patent.

**COUNT IX.    INFRINGEMENT OF U.S. PATENT NO. 7,949,068**

227.    Plaintiff repeats and re-alleges the allegations in the Paragraphs above as though fully

set forth in their entirety.

228.    For purposes of this Count, the term "Accused Products" shall mean Luminator's 802.11n/ac/ax Wi-Fi compatible devices including, but not limited to, the RoadRunner Pro, RoadRunner WC400, RoadRunner WC340, Outdoor TFT Monitor 32" Double-Sided, Apollo RoadRunner 4K Recorder, RoadRunner Analog HD Video Recorder, Apollo Vionet 3000 series mobile router, OUTDOOR TFT Monitor 55", OUTDOOR TFT KIOSK 46", OUTDOOR LED SIGN (192 × 64 Pixels, Double Sided), and Video Recorder X-DMR IP+, and other substantially similar products and services offered in the past, and all of the prior models, iterations, releases, versions, generations, and prototypes of the foregoing, along with any associated hardware, software, applications, and functionality associated with those products and solutions.

229.    The USPTO duly issued U.S. Patent No. 7,949,068 (hereinafter, the "'068 patent") on May 24, 2011, after full and fair examination of Application No. 12/698,090 which was filed on February 1, 2010. *See* '068 patent at p. 1.

230.    Integral Wireless owns all substantial rights, interest, and title in and to the '068 patent, including the sole and exclusive right to prosecute this action and enforce the '068 patent against infringers and to collect damages for all relevant times.

231.    The claims of the '068 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, as just one example, the claimed invention includes inventive components that improve systems and methods for data transmission by providing a transmitter diversity architecture that generates extension data streams from a set of base data streams through matrix multiplication with a unitary matrix.

232.    The written description of the '068 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

233.    During the period prior to the expiration of the '068 patent, Defendant directly infringed one or more claims of the '068 patent by making, using, selling, offering for sale, importing into the United States, providing, supplying, or distributing the Accused Products.

234.    Defendant directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '068 patent during the period prior to expiration.

235.    As just one example, prior to the expiration of the '068 patent, Defendant, through the use and provision of the Accused Products, provided a system comprising: a transmit processor configured to generate a set of one or more extension data streams based on a set of base data streams, wherein at least one data stream of the set of one or more extension data streams is the product of a matrix multiplication of the set of base data streams with a unitary matrix wherein the transmit processor is communicatively coupled to a set of base antennas and a set of one or more expansion antennas, wherein each base antenna is configured to transmit a corresponding one of the base data streams, and wherein each expansion antenna is configured to transmit a corresponding one of the extension data streams. *See* Ex. L.

236.    Integral Wireless or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of one or more claims of the '068 patent.

237.    Integral Wireless has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Integral Wireless in an amount that compensates it for such past infringements, which by law cannot be less than a reasonable royalty, together with

interest and costs as fixed by this Court under 35 U.S.C. § 284, for the period of infringement prior to expiration of the '068 patent.

## JURY DEMAND

238.    Integral Wireless hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

239.    Integral Wireless requests that the Court find in its favor and against Defendant, and that the Court grant Integral Wireless the following relief:

a.   Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

b.   A permanent injunction enjoining Defendant and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '007 patent, the '595 patent, the '805 patent, the '544 patent, the '360 patent, the '714 patent, and the '214 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of said patents by such entities;

c.   Judgment that Defendant account for and pay to Integral Wireless all damages to and costs incurred by Integral Wireless because of Defendant's infringing activities and other conduct complained of herein;

d.   Judgment that Defendant's infringements be found willful as to the '007 patent, the '595 patent, the '805 patent, the '544 patent, the '360 patent, the '714 patent, and the '214 patent, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award Integral Wireless its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>May 22, 2026</u>

Respectfully submitted,

By: */s/ James F. McDonough, III*

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

C. Matthew Rozier (CO 46854) *
**ROZIER HARDT MCDONOUGH, PLLC**
1001 Bannock Street
Suite 241
Denver, CO 80204
Telephone: (404) 779-5305; (202) 316-1591
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**ROZIER HARDT MCDONOUGH, PLLC**
712 W. 14th Street, Suite A
Austin, Texas 78701
Telephone: (210) 289-7541
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff INTEGRAL WIRELESS TECHNOLOGIES LLC*

\* Admitted to the Eastern District of Texas

**List of Attachments**

- Civil Cover Sheet
- Proposed Summons

**List of Exhibits**

A. Evidence of Use Regarding Infringement of U.S. Patent No. 7,676,007 (802.11ac-ax)

B. Evidence of Use Regarding Infringement of U.S. Patent No. 7,738,595 (802.11n-ac-ax)

C. Evidence of Use Regarding Infringement of U.S. Patent No. 7,627,805 (802.11n-ac-ax)

D. Evidence of Use Regarding Infringement of U.S. Patent No. 7,627,805 (5G)

E. Evidence of Use Regarding Infringement of U.S. Patent No. 8,139,544 (802.11n-ac-ax)

F.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,156,360 (BLE 5.0 and higher)

G.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,156,360 (BT BR-EDR 4.1 and higher)

H.  Evidence of Use Regarding Infringement of U.S. Patent No. 8,976,714 (5G)

I.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,707,214 (HEVC)

J.  Evidence of Use Regarding Infringement of U.S. Patent No. 9,207,748 (BLE 5.0 and higher)

K.  Evidence of Use Regarding Infringement of U.S. Patent No. 9,207,748 (BT BR-EDR 4.1 and higher)

L.  Evidence of Use Regarding Infringement of U.S. Patent No. 7,949,068 (802.11n-ac-ax)

**List of Supporting Links**

1.  U.S. Patent No. 7,676,007, USPTO, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7676007.

2.  U.S. Patent No. 7,738,595, USPTO, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7738595.

3.  U.S. Patent No. 7,627,805, USPTO, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7627805.

4.  U.S. Patent No. 8,139,544, USPTO, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8139544.

5.  U.S. Patent No. 8,156,360, USPTO, https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8156360.

6.  U.S. Patent No. 8,976,714, USPTO,

    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/8976714.

7.  U.S. Patent No. 7,707,214, USPTO,

    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7707214.

8.  U.S. Patent No. 9,207,748, USPTO,

    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/9207748.

9.  U.S. Patent No. 7,949,068, USPTO,

    https://ppubs.uspto.gov/pubwebapp/authorize.html?redirect=print/pdfRedirectDownload/7949068.